754 F.2d 1545
 8 Soc.Sec.Rep.Ser. 323, Unempl.Ins.Rep. CCH 15,896
Gerald KEY, Plaintiff-Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services
of the United States of America, Defendant-Appellee.
 No. 84-5543.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1984.
Decided March 8, 1985.
 
 Joshua W. Potter, Potter, Ridenour & Cohen, Pasadena, Cal., for plaintiff-appellant.
 Dennis Mulshine, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, ANDERSON and FERGUSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Key appeals from the district court's judgment affirming the Secretary's determination that he is not disabled. Our jurisdiction over the appeal rests on 28 U.S.C. Sec. 1291 (1982). We affirm.
 
 I.
 SUMMARY OF APPLICABLE LAW
 
 2
 Sometimes it is useful in a disability case to restate the legal matrix within which such cases arise. This is such a case. To qualify for disability benefits, a claimant must prove that he is unable to "engage in any substantial gainful activity" attributable to a "medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A) (1982); Waters v. Gardner, 452 F.2d 855, 857 (9th Cir.1971). The claimant's disability must be "of such severity that ... considering his age, education, and work experience, [he cannot] engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. Sec. 423(d)(2)(A).
 
 
 3
 The Secretary has promulgated a regulation to guide the Administrative Law Judge (ALJ) in determining whether a claimant qualifies for disability benefits. See 20 C.F.R. Sec. 404.1520 (1984). The regulation sets out a list of factors for the ALJ to consider during a disability inquiry. First, the ALJ considers whether the claimant is currently working: "If you [the claimant] are doing ... substantial gainful activity, we will find that you are not disabled." Id. Sec. 404.1520(b). Second, the claimant's impairment must be severe: "If you do not have any impairment(s) which ... limits your ... ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." Id. Sec. 404.1520(c). If the ALJ finds that an impairment is not severe, the claimant will be denied disabled status regardless of his age, education, and work experience. See id. Third, if a claimant suffers from an impairment listed in Appendix 1 of the regulation, the claimant is presumptively disabled. See id. Sec. 404.1520(d). When a claimant has a severe impairment that is not enumerated in Appendix 1, the ALJ determines whether the claimant can perform the kind of work he has done in the past: "If you can still do this kind of work, we will find you are not disabled." Id. Sec. 404.1520(e). Finally, if a severe impairment precludes a claimant from "doing past relevant work," the ALJ will "see if you can do other work. If not, you are disabled." Id. Sec. 404.1520(f)(1). With the requirements of 42 U.S.C. Sec. 423 and 20 C.F.R. Sec. 404.1520, arrayed like the pales of a stockade in mind, we turn to their application to the instant case.
 
 II.
 FACTS AND PROCEEDINGS BELOW
 
 4
 Key, a fifty-five year old man, has received electrical engineering training and in previous years has worked as a draftsman, a gardener, and a warehouseman. In 1959, Key sustained a severe head injury but subsequently returned to work and engaged in substantial gainful activity until 1981. On October 14, 1981, he applied for disability benefits. Key claims that his head injury, a heart condition, a balance problem, and difficulty in walking has rendered him disabled.
 
 
 5
 At the disability hearing, Key testified that he can walk a mile, can sit for an hour, and can stand for two hours. Key also testified that he can lift 150 pounds, that he drives a car, that he performs household chores, and that he attends a prayer meeting and Bible study at his church that lasts for two hours. Key's wife corroborated the claimant's testimony.
 
 
 6
 Based on the medical evidence submitted at the hearing and Key's own testimony, the ALJ found that, although Key suffers from post-right hemisphere trauma with mild-left hemiparesis, he retains the ability to perform basic work-related activities.[1] The ALJ therefore determined that Key is not disabled. The Appeals Council affirmed.
 
 
 7
 Key filed a complaint for review of the Secretary's decision in district court. The district court affirmed the Secretary's decision. Key filed a timely appeal with this court.
 
 III.
 DISCUSSION
 
 8
 Key advances four arguments on appeal. First, he alleges that the ALJ's categorization of his impairments as "non-severe" and therefore not disabling lacks substantial evidence. Second, Key argues that the ALJ failed to fully and fairly develop the record at the disability hearing. Third, he asserts that this court should remand the case to the ALJ for consideration of new evidence. Finally, Key attacks the validity of the Secretary's "severity" regulation and maintains that 20 C.F.R. Sec. 404.1520(c) (1984) conflicts with 42 U.S.C. Sec. 423(d)(2)(A) (1982). We hold that none of these contentions justifies a reversal of the judgment of the district court.
 
 
 9
 A. Substantial Evidence of a Non-Severe Disability
 
 
 10
 Our scope of review of disability determinations is limited: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. Sec. 405(g) (1982); Chavies v. Finch, 443 F.2d 356, 357 (9th Cir.1971); Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir.1971). Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Vidal v. Harris, 637 F.2d 710, 712 (9th Cir.1981). Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982). This latter principle is particularly applicable in this case.
 
 
 11
 Here, the ALJ heard conflicting reports from medical experts. Dr. Sung, Dr. Jesson, and Dr. Peterson concluded that Key's physical ailments prevented him from engaging in substantial gainful activity. The clinical findings of Dr. Mehta and Dr. Hunter, however, contradict their reports. Dr. Mehta confirmed Dr. Sung's and Dr. Peterson's diagnoses of Meniere's disease, but noted that the condition had been treated with Antivert. Dr. Mehta, although offering no opinion on the appellant's employability, indicated that Key seemed well-oriented and under no apparent distress. Dr. Hunter, moreover, concluded that the physical symptoms stemming from the 1959 accident did not render Key totally disabled.
 
 
 12
 The ALJ, after considering all the evidence regarding his physical condition, concluded that Key did not have a severe disability and could perform basic work-related activities. The medical evidence presented perhaps would permit a reasonable mind to make a finding of disability. It also would permit a finding of no disability. When there is evidence sufficient to support either outcome, we must affirm the decision actually made. See Rhinehart, 438 F.2d at 921.
 
 
 13
 Key argues, however, that none of the reports of the medical experts conflict with regard to the diagnosis of Meniere's disease. Therefore, Key contends, he suffers from an impairment listed in Appendix 1, see 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 2.00 B.2, and is presumptively disabled. See 20 C.F.R. Sec. 404.1520(d). This does not carry the day for Key, however.[2]
 
 
 14
 The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability. The Listing of Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity. But the ALJ "will not consider your impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment." Id. Sec. 404.1525(d) (emphasis added).
 
 
 15
 Dr. Sung, Dr. Peterson, and Dr. Mehta all diagnosed Meniere's disease. For the diagnosis of Meniere's disease to qualify as a listed impairment, though a number of other findings are necessary. The findings must include disturbances of balance characterized by "an hallucination of motion or loss of position sense and a sensation of dizziness.... Nausea, vomiting, ataxia and incapacitation are frequently observed." 20 C.F.R. pt. 404, subpt. P, App. 1 Sec. 2.00 B.2 (emphasis added). Yet Dr. Hunter, who performed a full neurological examination, found no evidence of ataxia. Meniere's disease, when severe, is characterized by "paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss." 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 2.00 B.2. Here, however, Dr. Hunter found that "auditory acuity was normal." Because of the lack of the required findings, the ALJ's conclusion withstands Key's attack.
 
 
 16
 Likewise, the diagnosis of mild left hemiparesis does not establish the existence of persistent disorganization of motor function, see 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 11.00(C), or a central nervous vascular accident, see 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 11.04. The assessment of an impairment under section 11.00(C) "depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 11.00(C). Yet Dr. Hunter found that Key's muscle size, strength, and tone were normal and that Key showed surprisingly good bilateral grip strength. Under section 11.04, a claimant must exhibit "ineffective speech or communication" or "significant and persistent disorganization of motor function." 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 11.04. But while Dr. Mehta noted that Key's speech was mildly dysarthic and that he walked with a broad based gait, Dr. Hunter described Key as "communicative" and found no objective evidence to support the claimant's complaints of "unsteadiness." Given this conflict in medical evidence, the ALJ properly declined to consider Key's condition as equivalent to either listed impairment.
 
 
 17
 Key also relies on the report submitted by Dr. Dorr to the Appeals Council after the ALJ's decision. Dr. Dorr, a psychiatrist, diagnosed dementia, a condition which satisfies the criteria of a listed mental impairment in the Secretary's regulations. See 20 C.F.R. pt. 404, subpt. P, App. 1, Sec. 12.02. Dr. Hunter's mental status examination, however, revealed that Key displayed average intellectual functioning with fully intact recent and remote memory, judgment, affect, and sensorium and no sign of emotional disturbance or delusional thinking. He concluded that Key did not suffer from dementia. Again, the ALJ has the power to weigh conflicting evidence and reach the conclusion that Key did not suffer from a severe mental impairment.
 
 
 18
 Key argues that the ALJ should have excluded Dr. Hunter's medical report on the ground that it was biased. We disagree. Nothing in the record indicates that Dr. Hunter demonstrated any bias toward Key during the medical examinations or during the preparation of reports.
 
 
 19
 Therefore, we conclude that the ALJ's finding that Key did not suffer from a severe disability is supported by substantial evidence.
 
 
 20
 B. Failure to Fully and Fairly Develop the Record
 
 
 21
 Appellant urges us to remand the case for a further hearing because the ALJ did not fully and fairly develop the record. Key proceeded at the administrative hearing without the assistance of counsel and now claims that the ALJ did not conduct the hearing in a manner designed to elicit all his pertinent testimony regarding his disability.
 
 
 22
 Administrative procedures "should be understandable to the layman claimant ... and not strict in tone and operation." Richardson v. Perales, 402 U.S. 389, 400, 401, 91 S.Ct. 1420, 1426, 1427, 28 L.Ed.2d 842 (1971). When a claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Cox v. Califano, 587 F.2d 988, 991 (9th Cir.1978). See also Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.1981). Lack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings. Vidal, 637 F.2d at 713.
 
 
 23
 Key marshals a number of charges directed at the ALJ. He asserts that the ALJ interrupted his answers, did not explore his heart condition, failed to inquire about the effects of Meniere's disease, and neglected to develop important vocational information to determine whether he worked in a sheltered or competitive capacity in California. The record contradicts each of these contentions. The ALJ did not "thwart meaningful responses," but merely sought to clarify unclear statements by Key. The ALJ questioned Key about his alleged heart condition and his answers are part of the record. The ALJ also inquired about the frequency of Key's dizzy spells resulting from Meniere's disease. Finally, whether Key worked in a sheltered or competitive environment and can perform his past work is irrelevant in determining whether he now can perform basic work-related activities. See 20 C.F.R. Sec. 404.1520 (1984).
 
 
 24
 The ALJ, then, did not fail to fully and fairly develop the record.
 
 C. Consideration of New Evidence
 
 25
 Key urges us to remand the case to the Secretary for consideration of new evidence. This court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. See Goerg v. Schweiker, 643 F.2d 582, 584 (9th Cir.1981); 42 U.S.C. Sec. 405(g). Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding. See Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir.1984). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter. Id. If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380 (9th Cir.1984). At a minimum, such evidence must be probative of mental or physical impairment. Hall v. Secretary of Health and Human Services, 602 F.2d 1372, 1377 (9th Cir.1979).
 
 
 26
 Key's new evidence is a medical report prepared by Dr. Jacobs, dated April 23, 1984, that tends to show that he suffered from severe ataxia, lack of balance, and mild double vision. Key, however, offers no reason why he had not solicited this information from Dr. Jacobs earlier. Nor does Key tell us why he did not ask the district court to consider the evidence. The obvious explanation is that when Key failed to succeed on his disability claim in the agency and district court hearings, he sought out a new expert witness who might better support his position. The "good cause" requirement would "be meaningless if such circumstances were sufficient to allow introduction of new evidence." Allen v. Secretary of Health and Human Services, 726 F.2d 1470, 1473 (9th Cir.1984).
 
 
 27
 Since Key failed to meet the "good cause" requirement, we decline to remand the case for consideration of new evidence.
 
 D. The Validity of the Severity Regulation
 
 28
 Finally, Key argues that the Secretary's "severity" regulation, 20 C.F.R. Sec. 404.1520 (c) (1984), conflicts with 42 U.S.C. Sec. 423(d)(2)(A) because in some instances a no disability determination may be made on the basis of medical evidence alone without consideration of the claimant's age, education, work experience, and ability to perform past work. 42 U.S.C. Sec. 423(d)(2)(A) provides that an individual is disabled if his impairments are of such severity that he cannot do his past work and, considering his age, education, and work experience, cannot do any other work which exists in the national economy. 20 C.F.R. Sec. 404.1520(c) provides, however, that if an impairment is not severe, i.e., one that does not "significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities," a finding of not disabled is mandated without consideration of the claimant's age, education, and work experience.
 
 
 29
 A lack of symmetry certainly appears to exist. Key correctly points out that the regulation shifts the focus from his ability to do past work to his ability to perform "basic work activities." The regulation also precludes the Secretary from considering a claimant's age, education, and work experience when the impairment is not severe. Instead, the regulation focuses entirely on the severity of the impairment.
 
 
 30
 Our criticism is checked, however, by the fact that Congress has entrusted the Secretary with the primary responsibility for interpreting the Social Security Act. We are not free to set aside a regulation promulgated by the Secretary simply because we might have interpreted the statute differently. See Batterton v. Francis, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). We should declare a regulation invalid only if the Secretary exceeded his or her statutory authority or if the regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See id. at 426, 97 S.Ct. at 2406.
 
 
 31
 In this case, however, we need not reach the issue of the validity of the severity regulation. The ALJ determined that Key had failed to establish the presence of any significant restrictions on his ability to perform basic work activities and thus had no severe impairment. See 20 C.F.R. Sec. 404.1520(c). But even assuming the invalidity of this provision, the finding of no disability is still supported by substantial evidence. If a claimant does have a severe impairment, the last step of the sequential analysis requires that the ALJ see whether that claimant "can do other work." See 20 C.F.R. Sec. 404.1520(f)(1) (1984). To make this determination, the ALJ considers the claimant's functional capacity, age, education, and past work experience. Id. This is precisely the inquiry made by the ALJ under 42 U.S.C. Sec. 423(d)(2)(A). Here, Key has testified that he lost his last job not because of a disability but because "my time ran out with the State of California." Dr. Hunter, moreover, opined that "nothing ... would support his claim of total disability" and that Key could return to other gainful employment. Therefore, the ALJ properly concluded that Key did not qualify for disability benefits even if we do not consider the severity regulation.
 
 
 32
 Accordingly, we affirm the district court's judgment affirming the Secretary's determination that Key is not disabled.
 
 
 33
 AFFIRMED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 34
 The majority finds that substantial evidence supports the decision of the administrative law judge (ALJ). I dissent.
 
 
 35
 Because I find the ALJ failed to consider plaintiff's impairments in accordance with the proper provisions of the Code of Federal Regulations, I would reverse the denial of disability insurance benefits and remand for correct determination of plaintiff's disability claim.
 
 
 36
 A person is "disabled" within the meaning of the Social Security Act and eligible for benefits, providing income criteria are met, if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. Sec. 1382c(a)(3)(A).
 
 
 37
 The applicable regulation promulgated by the Secretary of Health & Human Services (Secretary), 20 C.F.R. Sec. 404.1520, describes the steps in evaluating disability. The ALJ in this case correctly set forth the process as follows:
 
 
 38
 [T]he Social Security Regulations provide a uniform sequence of considerations which control the adjudication of disability claims. These regulations require that the following be considered in sequence: (1) whether claimant is actually engaging in substantial activity; and, if not, (2) whether his impairments are of a level of severity which meets or is equal to an impairment listed in Appendix 1 of Subpart P of Regulations No. 4; or, if they do not but are severe, (3) whether they prevent him from doing his usual or customary work; and, if so, (4) whether claimant can perform any other substantial gainful activity which exists in the national economy, considering his age, education and work experience.
 
 
 39
 (Trial Record at 27).
 
 
 40
 Despite the ALJ's clear understanding of the proper procedure by which disability determinations are made, he failed to consider whether Key's impairments met or equaled any impairments listed in Appendix 1 of Subpart P of Regulations No. 4. 20 C.F.R. Part 404, Subpart P, Appendix 1.
 
 
 41
 Appendix 1 sets forth impairments which the Secretary considers to be "severe" and if the claimant's impairment is either listed or equal to a listed impairment, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. Sec. 404.1520(d).
 
 
 42
 Section 404.1525(a) of Title 20 of the Code of Federal Regulations sets forth the purpose of the Listing of Impairments as follows:
 
 
 43
 The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. Most of the listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.
 
 
 44
 Each section of the Listing of Impairments contains a general introduction giving definitions of key concepts and certain required medical findings to support impairments used in that section. In addition, the required level of severity is shown by one or more sets of medical findings under "Category of Impairments."
 
 
 45
 One of the listed impairments is Meniere's disease. Appendix 1 discusses special sense and speech impairments in sections 2.00 through 2.09. Section 2.00(B)(2) states:
 
 
 46
 Vertigo associated with disturbances of labyrinthine-vestibular function, including Meniere's disease. These disturbances of balance are characterized by an hallucination of motion or loss of position sense and a sensation of dizziness which may be constant or may occur in paroxysmal attacks. Nausea, vomiting, ataxia and incapacitation are frequently observed, particularly during the acute attack....
 
 
 47
 Meniere's disease is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are unpredictable and irregular, but may be long-lasting; hence, the severity of impairment is best determined after prolonged observation and serial reexaminations.
 
 
 48
 The ALJ does not dispute the diagnosis of Key as having Meniere's disease and in fact indicated it formed a part of the evidence considered in reaching his decision. While the ALJ is not obligated to find a claimant's impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment (20 C.F.R. Sec. 404.1525(d)), he must examine the evidence to determine if the appropriate findings are present as listed therein. In this case, the ALJ made no determination as to whether the medical findings of the physicians who examined Key and submitted reports met or equaled the findings required under the category of impairments for special sense and speech impairments.
 
 
 49
 Likewise, the diagnosis of left hemiparesis noted by the ALJ and confirmed by Drs. Mehta, Peterson and Sung was not considered in conformity with Appendix 1. The left hemiparesis occurred as a result of an automobile accident in which Key suffered major brain damage, and such impairment is also listed in Appendix 1, section 11.00(C), as follows:
 
 
 50
 Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.
 
 Further, section 11.04 provides:
 
 51
 Central nervous system vascular accident. With one of the following more than 3 months post-vascular accident:
 
 
 52
 A. Sensory or motor aphasia resulting in ineffective speech or communication; or
 
 
 53
 B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.
 
 
 54
 Dr. Mehta's report of December 3, 1981 indicates Key's speech is mildly dysarthric, he walks with a broad based gait, and has diminished arm swing on the left with a slightly left accent to the gait. These medical findings support the required level of severity as required under section 11.04 and should have been considered by the ALJ.
 
 
 55
 The ALJ should also consider the reports of Dr. Dorr (a psychiatrist who examined Key in 1982 but whose report was not submitted to the appeals council until after the ALJ's decision) and Dr. Jacobs (whose report dated April 23, 1984 was directed to Dr. Donald Klotz and was not received by Key's counsel until May 14, 1984). See Burton v. Heckler, 724 F.2d 1415, 1418 (9th Cir.1984) (fact that the evidence did not exist at the time of the ALJ's decision establishes good cause for a claimant's failure to introduce it before the ALJ). The materiality of these two reports is clear. Dr. Dorr found Key suffering from dementia, post traumatic. Appendix 1 discusses mental disorders in sections 12.00 through 12.05 and specifically provides in section 12.02 as follows:
 
 
 56
 Chronic brain syndromes (organic brain syndromes. With both A and B:
 
 
 57
 A. Demonstrated deterioration in intellectual functioning, manifested by persistance of one or more of the following clinical signs:
 
 
 58
 1. Marked memory defect for recent events; or
 
 
 59
 2. Impoverished, slowed, perserverative thinking, with confusion or disorientation; or
 
 
 60
 3. labile, shallow or coarse affect;
 
 
 61
 B. Resulting persistance of marked restriction of daily activities and construction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.
 
 
 62
 Dr. Dorr specifically sets forth the clinical evidence upon which he relied in forming his opinion:There are no signs of a primary thinking disorder but many clinical evidences of an organic brain syndrome, to wit: psychomotor retardation (long delays in answering personal data questions); confusion about which side of his brain was injured; inability to recall the name of the drafting school he attended for many months; only approximate orientation; poor immediate recall; perserveration of thought; peculiar use of the word "open" in place of "unemployed"; and an exaggeration of the intellectual tasks involved in his jobs since his accident. In my opinion he grossly overestimates his ability to work as a draftsman (since he can no longer use a slide rule and has been unable to learn to use a computer).
 
 
 63
 The report of Dr. Jacobs sets forth medical findings as a result of his neurologic examination of Key which the ALJ should consider in determining whether Key's impairments meet the required level of severity as provided in Appendix 1.
 
 
 64
 It is clear from the record in this case that Key's impairments (Meniere's disease, left hemiparesis and dementia) are all listed as "severe" impairments in Appendix 1 of Subpart P of Regulations No. 4, and the ALJ should have reviewed the evidence to determine if the medical findings met or equaled the required showing contained in Appendix 1 for these listed impairments.
 
 
 65
 Because the ALJ failed to consider whether the medical evidence supported the required level of severity in conformity with the guidelines of Appendix 1, this case should be remanded so the proper determination can be made in conjunction with Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix 1.
 
 
 
 [1]
 20 C.F.R. Sec. 404.1521 (1984) provides in part:
 (a) Non-Severe Impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.
 (b) Basic Work Activities. When we talk about basic work activities we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
 (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling....
 
 
 [2]
 The dissent argues that the ALJ failed to consider whether Key's impairments met or equaled any impairments listed in Appendix 1. Yet the ALJ specifically noted in his summary of the law and regulations that "a claimant ... may be found disabled if he has medically determinable impairments which are listed in Appendix 1 or if his impairments are determined to be medically the equivalent of a listed impairment." The ALJ discussed his finding of no disability "in light of these factors." Further, the ALJ examined the medical reports submitted by the various physicians and concluded that the preponderance of the evidence did not establish the existence of the findings necessary to support a showing of disability under the Listing of Impairments