**Larry Wayne THOMAS, Personal Representative of the Estate of James Thomas, Plaintiff,**

v.

**Otis BOWEN, Secretary of Health & Human Services, Defendant.**

**Civ. No. F 87–297.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 15, 1988.

Floyd A. Ramsier, Fort Wayne, Ind., for plaintiff.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This is an action for judicial review of a final decision of the defendant Secretary of Health and Human Services denying plaintiff's application for the establishment of a period of disability under section 216(i) of the Social Security Act and for disability insurance benefits as provided by section 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423. Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing." It also provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 416(i)(1); 42 U.S. C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not enough for plaintiff to establish that an impairment exists. It

must be shown that the impairment is severe enough to preclude plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (4th Cir. 1962), *cert. denied*, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970, (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill.1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir.1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir.1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the Secretary's findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984) *citing Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir.1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. § 405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

In the present matter, after consideration of the entire record, the ALJ made the following findings:

1. The claimant met the disability insured status requirement of the Act on August 30, 1985, the date the claimant stated he became unable to work, and continues to meet them through December 31, 1989.

2. The claimant has not engaged in substantial gainful activity since August 30, 1985.

3. The medical evidence establishes that the claimant has severe fracture and dislocation of the left elbow, colostomy, secondary to cancer of the colon, and essential hypertension, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony regarding his symptoms and limitation of function was sincere, supported by the medical evidence, and credible, except for his allegation that he has to lie down twice a day.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting and carrying more than 20 pounds maximum, any work involving significant use of the left arm and hand, and maintaining close and constant attention to details (20 CFR 404.1545).

6. The claimant is unable to perform his past relevant work as layout inspector and machinist.

7. The claimant's residual functional capacity for the full range of light work is reduced by inability to use his left arm and hand and inability to maintain close attention to details.

8. The claimant is 46 years old, which is defined as a younger person (20 CFR 404.1563).

9. The claimant has the equivalent of a high school education (20 CFR 404.1564).

10. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR 404.1568).

11. Based on exertional capacity for light work, and the claimant's age, education, and work experience, Section 404.1569 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's additional nonexertional limitations do not allow his [sic] to perform the full range of light work, using the

above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: school-crossing guard, stationery guard, parking lot attendant, self service gas station attendant, usher, and toll booth attendant. Each of these jobs exist in significant numbers in the national economy.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.-1520(f)).

(Tr. 24–25). Based upon those findings, the ALJ determined that plaintiff was not entitled to a period of disability or disability insurance benefits. The Appeals Council denied plaintiff's request for review on August 19, 1987. This appeal followed.

Plaintiff filed a motion for summary judgment on February 29, 1988. Defendant Secretary filed a cross-motion for summary judgment on May 2, 1988. Upon full review of the record in this cause, this court is of the view that substantial evidence supports the Secretary's conclusion and accordingly, the decision of the ALJ denying benefits will be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 n. 2 (7th Cir.1988); *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

The following steps are addressed in order:

(1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985); *accord Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

■ At the time of the administrative hearing, plaintiff was 49 years old and had a high school equivalency education. His past relevant work was as a layout quality control expert and machine operator, which required him to lift objects weighing between two and seventy-five pounds. As a quality control expert, plaintiff's job was considered by a vocational expert to be highly skilled work.

In a decision dated December 30, 1986, the ALJ found that plaintiff had a severe fracture and dislocation of the left elbow, a colostomy secondary to cancer of the colon, and essential hypertension which alone, or in combination, did not meet or equal the listings in the Listings of Impairments. The ALJ further found that plaintiff possessed the residual functional capacity for light work that did not require plaintiff to use his left arm and hand and to maintain close attention to details and accordingly plaintiff was found not entitled to benefits.

The record contains numerous medical reports. On April 30, 1983, plaintiff was injured in a car accident which shattered his left elbow and required surgery. That surgery consisted of the implantation of hardware in plaintiff's fractured left elbow. The hardware which was inserted to mend the fracture was removed from plaintiff's elbow in January, 1985. An orthopedic surgeon at the Mayo Clinic, Dr. R.S. Bryan, reported that plaintiff could only perform work requiring the use of one arm and that plaintiff was a "normal individual with the exception of the left arm which is a nonfunctional harm." (Tr. 123).

In September, 1985, plaintiff was found to have a cancerous tumor in his colon. Surgery was performed at the Mayo Clinic on September 13, 1985 to remove the tumor and plaintiff was given a colostomy. On

October 29, 1985, Dr. Robert W. Beart in a letter to plaintiff's family physician reported that plaintiff recovered rather well from his colostomy and that plaintiff was being referred for radiation therapy. On December 20, 1985, Dr. John N. Crawford, a radiation oncologist at Parkview Memorial Hospital, wrote Dr. Haughn and told him that plaintiff tolerated the radiation treatment "quite well except for some minimal diarrhea" which had been controlled with medication. (Tr. 141). Dr. Haughn himself indicated on May 13, 1986 that plaintiff's cancer appeared to be responding to treatment. During the course of the administrative hearing, plaintiff testified that his colostomy would not preclude him from working although it did cause him some embarassment.

On January 15, 1986, plaintiff underwent an examination for the purpose of disability evaluation by Dr. John R. Arford. After reviewing plaintiff's medical history, Dr. Arford noted that plaintiff was recently becoming anxious about his medical condition because he also had some pain and swelling around the olecranon of the right elbow. Plaintiff expressed concern that there was a possibility of losing functioning in the right arm as well as the left arm. With regard to plaintiff's mental status, Dr. Arford indicated that the claimant had some anxiety about his physical well being and concerns about his son who was in prison but that he was taking medication to help control his anxieties. At the time of the examination, plaintiff's blood pressure was elevated at 162/106 and his heart beat was rather slow at 50 beats per minute. Plaintiff had marked restriction with respect to extension of his left arm and there was deformity of the left elbow. Both elbows were x-rayed and the x-ray of the right elbow was normal while the x-ray of the left elbow showed marked disorganization and dislocation. Dr. Arford found plaintiff to be oriented to time, place and person.

Later in January 1986, plaintiff was admitted to the Wabash County Hospital in an acutely ill condition which was determined to be due to a bowel obstruction. Plaintiff underwent surgery and was discharged in an improved condition on February 4, 1986. At the time of his discharge, plaintiff's hypertension, which Dr. Haughn had diagnosed in December of 1985, was found to be controlled.

Plaintiff went to the Mayo Clinic in March of 1986 for scheduled surgery but postponed the surgery because he did not believe he had recovered from his prior surgery. At that time, Dr. G.L. Jerry indicated that the plaintiff was not capable of working. In a letter dated March 14, 1986, Dr. Allen Cameron of the Mayo Clinic indicated that there were a few minor abnormalities discovered during tests on plaintiff including an abnormal liver function test, a low blood count and protein in the urine. Dr. Cameron did not indicate that these represented severe abnormalities.

In a letter dated November 7, 1986, Dr. Bryan noted that he had last seen plaintiff on March 10, 1986, at which time plaintiff was scheduled for total elbow replacement but opted to postpone the surgery. In the letter, Dr. Bryan indicated that the risk of total elbow arthroplasty was approximately a 10 to 15 percent complication rate and that the risk of reoperation within five years was approximately 5%. In a letter dated October 31, 1986, Dr. Cameron indicated that the plaintiff's left arm was approximately three inches shorter than his right arm and that he had a grossly deformed left elbow joint secondary to the automobile accident. Because of that, the arm would not be of much use for any work and the pain in the elbow could make other types of work difficult. A biopsy of the nodule on the right forearm showed a dermatofibroma which Dr. Cameron noted was harmless and required no further treatment.

Dr. Haughn, in a letter dated November 11, 1986, thoroughly overviewed plaintiff's complaints. Dr. Haughn noted that he had been plaintiff's doctor since August of 1978. According to Dr. Haughn, plaintiff had problems controlling his blood pressure, trouble with a nervous condition, and gout attacks of his knees and ankles. Dr. Haughn wrote that the elbow implant carried with it the high percentage risk of

rejection of the implant with infection or unacceptance of the implant and could very well result in the entire amputation and loss of the larger portion of the arm. He noted plaintiff's surgery for a bowel blockage in January, 1986 and a further surgery in May, 1986 to repair a ventral incision hernia which occurred at a previous surgery site. At that same time, surgery was performed on his liver to remove two spots. Noting that plaintiff's left arm was more than three inches shorter than his right arm, Dr. Haughn indicated that plaintiff had a 90% weakness in that arm. Due to those multiple conditions, Dr. Haughn opined that plaintiff was "totally unable to perform any type of work." (Tr. 196).

The medical record also contains opinions from state agency physicians who had not treated or examined the claimant. After noting their location in the record, the ALJ merely noted that he gave more weight to opinions of physicians who had actually seen or treated the plaintiff.

Based upon the foregoing medical reports, and the testimony adduced at the administrative hearing, the ALJ wrote:

> The evidence as a whole very strongly indicates that the claimant has virtually no use of the left arm and in addition, has severe pain in the left arm. Furthermore, the claimant's allegation that his pain medication causes him to have difficulty concentrating to the extent that he no longer can do precision work as required by his most recent job is fully credible. Also, although the claimant denies that his colostomy has any specific affect [sic] on his ability to work, the fact that he has had it and has undergone radiation therapy would be expected to weaken him somewhat. In addition, the claimant has some anxiety, particularly when he developed a problem with the right elbow and was worried that he might lose function in it. Apparently, the problem with the right elbow is passed [sic].
> The evidence as a whole indicates that the claimant has the residual functional capacity for light work which does not require any use of the left arm and does not require close and constant attention to details. With these limitations, the claimant is not able to return to his past relevant work.

(Tr. 23). In reaching his conclusions, the ALJ cogently analyzed the evidence in the record and ultimately concluded as pointed out previously that the claimant could engage in substantial gainful activity and therefore was not disabled within the meaning of the Social Security Act.

In his brief before this court, plaintiff places substantial reliance upon a June 30, 1987 report from Dr. R.C. McNabb; a June 2, 1987 report from Dr. Alan J. Cameron; and a May 7, 1987 report from plaintiff's treating physician, Dr. Haughn. Those reports all postdated the decision of the ALJ but were presented before the Appeals Council. The Appeals Council considered those reports in denying a request for review because it was the Council's view that the additional evidence was not material to the period at issue. It was within the Appeals Council's prerogative to make that determination.

█ "The Appeals Council has a duty to review the entire record only if the additional evidence submitted is new and material." *Gamer v. Secretary of Health & Human Services*, 815 F.2d 1275, 1278 (9th Cir.1987). The applicable regulations provide:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 CFR § 404.970(b). As the foregoing excerpt makes clear, "in order for this court to remand the case, [plaintiff] must show that the new evidence is material and

that there was good cause for the failure to incorporate the evidence into the record in the prior proceeding." *Gamer, supra,* at 1278; *see also Milano v. Bowen,* 809 F.2d 763, 766 (11th Cir.1987); *Smith v. Bowen,* 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir. 1986); *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir.1985). "To be material, the new evidence must bear directly and substantially on the matter in issue." *Cotton v. Bowen,* 799 F.2d 1403, 1409 (9th Cir.1986). To show good cause, the claimant must establish that he could not have obtained the evidence during the prior proceeding. *Id.* at 1409; *see also Key, supra,* at 1551.

█ In the present matter, plaintiff has wholly failed to meet his burden. While on its face, the evidence would appear to be arguably new in that it did not exist at the time the ALJ rendered his decision, plaintiff has failed to show that the evidence is material and has further failed to show why that evidence could not have been presented to the ALJ in a timely fashion.

Based upon the record before him, the ALJ apparently discounted Dr. Haughn's assertion contained in a report dated November 11, 1986, that plaintiff was "totally unable to perform any type of work" in favor of reports from other physicians which were less extreme. With respect to the amount of weight given different physicians' reports, the United States Court of Appeals for the Seventh Circuit wrote:

> The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. *Cummins v. Schweiker,* supra, 670 F.2d [81] at 84 (7th Cir.1984). The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise. A lawyer with a general practice often brings in a specialist for a few hours' consultation and pays handsomely; the specialist's review of an antitrust problem may reveal more than two weeks of work by a lawyer who handles few antitrust cases. Similarly, a physician who specializes in diseases of the thorax may contribute more knowledge to the administrative process after a one-hour examination than the general practitioner (who sees few thorax problems) contributes after years on the case. Many patients pay premium prices to have an hour's time with a physician with expertise in the precise problem they face, greatly preferring an hour of top-quality care to a week of average care. The consulting specialist can tell how a patient fits in a spectrum of similar ailments, something the non-specialist may not be able to do.
>
> The Secretary's delegate is free to make the same sort of choice an informed patient may make for himself. Experience and knowledge of this case lie on the side of the treating physician, expertise and knowledge of similar cases on the side of the consulting specialist. How these weigh in a particular case is a question for the Secretary's delegate, subject only to the rule that the final decision must be supported by "substantial evidence." See *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Strunk v. Heckler,* 732 F.2d 1357, 1362–64 (7th Cir. 1984).

*Stephens v. Heckler,* 766 F.2d 284, 289 (7th Cir.1985). Here, as authorized by *Stephens,* the ALJ made an informed choice and considered all of the various reports in reaching his conclusion. In fact, in contrast to Dr. Haughn's assertion, Dr. Bryan, a surgeon at the Mayo Clinic, wrote that plaintiff could still successfully work in an occupation that did not require the use of his left arm. In short, this court is of the view that th ALJ did not ignore or improperly discount any of the reports in the record.

Plaintiff also asserts that the ALJ failed to give serious consideration to the record as a whole and failed to consider his impairments in combination. With that proposition, this court does not agree. It is obvious from the ALJ's decision that he considered the entire record and determined that plaintiff's impairments, alone or in combination, do not meet or equal the listings in the Listings of Impairments. Nor

did the ALJ ignore, as plaintiff suggests, plaintiff's complaints of pain and the side effects of his medication. Indeed, the ALJ acknowledged that plaintiff's "radiation therapy would be expected to weaken him somewhat" (Tr. 23), and that "the claimant's allegation that his pain medication causes him to have difficulty concentrating to the extent that he no longer can do precision work as required by his most recent job is fully credible." (*Id.*). Nevertheless, the ALJ was of the view that plaintiff could perform work of a sedentary nature which did not require the concentration necessary for performance of his prior employment as a quality control expert and machine operator.

■■■ Plaintiff also takes issue with the ALJ's determination that plaintiff's "testimony regarding his symptoms and limitations of function was sincere, supported by the medical evidence, and credible, except for his allegation that he has to lie down twice a day." It is plaintiff's position that the ALJ had no basis for rejecting plaintiff's contention that he had to lie down twice a day. Credibility determinations of the ALJ are, of course, subject to great deference by this court. *See Zalewski v. Heckler,* 760 F.2d 160 (7th Cir.1985); *Zblewski v. Schweiker,* 732 F.2d 75 (7th Cir.1984). This court has thoroughly examined the transcript and the evidence in the record and can find no basis for not deferring to the ALJ's credibility determination and, insofar as the ALJ discounted plaintiff's contention that he needed to lie down twice a day, it suffices to note that no physician of record has prescribed or opined that plaintiff must lie down at least twice a day.

As indicated, the ultimate conclusion of the ALJ was that there are a significant number of jobs in the national economy which plaintiff could perform. How the Secretary ALJ usually arrives at such a conclusion was overviewed by the United States Court of Appeals for the Seventh Circuit in *Smith v. Schweiker,* 735 F.2d 267 (7th Cir.1984). There, the court wrote:

> Since 1978 the Secretary has sought to meet this burden by relying in part on its Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (1983). The Appendix 2 Guidelines indicate in grid form whether a significant number of jobs exist in the national economy for individuals with various impairments of physical capacity, ages, education, and work experience. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983). Where an individual's characteristics correspond to factors on the grid, the Guidelines direct a finding of disabled or not disabled.
>
> The Guideline rules do not encompass the characteristics of every conceivable claimant but rather describe what the agency has determined to be major vocational and functional patterns. *See* 20 C.F.R. § 404.1569 (1983). The Guidelines only apply when the claimant's vocational factors and residual functional capacity correspond with the criteria of a specific rule. *Id.*; Appendix 2, § 200.00(d). *See Campbell,* 461 U.S. 458 at 462 n. 5, 103 S.Ct. at 1955 n. 5 ("the rules will be applied only when they describe a claimant's abilities and limitations accurately"). *See also Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984); *Cannon, [v. Harris],* 651 F.2d [513] at 517 [7th Cir. 1981].

*Smith, supra,* at 270. "To uphold the ALJ's finding that the grids may be used in a given case, [the United States Court of Appeals for the Seventh Circuit] requires only 'that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available.'" *Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir.1987), *quoting Warmoth v. Bowen,* 798 F.2d 1109, 1112 (7th Cir.1986).

In the present matter, the ALJ determined that plaintiff possessed the residual functional capacity for light work. That finding is supported by the record. Indeed, Dr. Bryan, plaintiff's surgeon, believed that plaintiff could still work in a position that did not require the use of his left arm and plaintiff himself testified that he was able to occasionally lift 20 pounds with his right hand and that he did not experience

any problems in sitting, standing or walking. Plaintiff further testified that his colostomy and his nervous problems would not preclude him from working. In addition, Marion Fisher, a vocational expert who testified at the hearing, opined that considering a person of plaintiff's age, education and work experience who could use only his right arm to lift 20 pounds, who did not have to use his left arm and hand, who experienced pain which affected his concentration span and who occasionally experienced dizziness and drowsiness because of medication would still be able to work in a position such as that of a parking lot attendant or school crossing guard. (Tr. 67–71). The vocational expert further testified that such jobs exist in significant numbers in the regional economy. In light of the evidence before the ALJ, the ALJ's reliance on the grid is a framework for which decisionmaking was proper and based upon plaintiff's age, education and work experience, Rule 202.21 of the grid directed a conclusion of not disabled.

Taken in balance, this court is of the view that substantial evidence supports the ALJ's conclusions. Accordingly, the Secretary's decision denying benefits will be affirmed.

### Conclusion

On the basis of the foregoing, plaintiff's[1] February 29, 1988 motion for summary judgment is DENIED. Defendant Secretary of Health & Human Services' May 2, 1988 motion for summary affirmance is GRANTED. Summary judgment shall be entered in favor of the defendant and against the plaintiff.

---

1. While this opinion was being drafted, a "Suggestion of Death Upon the Record" was filed by the plaintiff on July 5, 1988, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure. In accordance with that suggestion, this court substituted Larry Wayne Thomas, the personal representative of the estate of James Thomas, as plaintiff. Thus, technically plaintiff-decedent's motion for summary judgment is denied.