116 F.3d 484
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sheryl KING, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 96-55012.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 11, 1997.**
Decided June 16, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CV-95-865-JR; Joseph Reichmann, Magistrate Judge, Presiding.
 
 
 2
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,*** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Shirley King appeals the Order of the Magistrate Judge, in which he affirmed the Commissioner of the Social Security Administration's ("Commissioner") final decision that King was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423, or under Title XVI of the Act, 42 U.S.C. § 1381a. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I. Facts and Proceedings Below
 
 5
 At King's disability hearing, she testified that she was 42 years old with a seventh grade education and past work experience consisting of working in a tire factory and operating a paving business with her husband. In operating the business, she did bookkeeping, made estimates, solicited jobs, and sometimes ran the crews for her husband. King stopped working in 1986 because of depression, pain in her back and buttocks, and menstrual irregularities with memory loss and irritability.
 
 
 6
 King stated that she could take care of her personal hygiene needs, could cook, dust, vacuum, clean the kitchen and bathroom, do dishes, do laundry, take her daughter to and from school, and do the grocery shopping. She sometimes went to restaurants, to the movies, and to the mall; she helped her daughter with her homework, painted t-shirts as a hobby, and went for rides or to the park with her daughter on weekends.
 
 
 7
 Dr. Karl E. Steinberg summarized the medical evidence of record, testifying that King had the following diagnoses in her medical history: fibrocystic breast disease (not active at the time of the hearing); menstrual abnormalities; mild lumbar spine osteoarthritis; and sensory nerve root irritation. Dr. Steinberg stated that the latter condition could cause some degree of pain. Based on the medical evidence of record, he concluded that King was limited to lifting no more than fifteen pounds frequently or twenty-five pounds occasionally, could not perform work requiring more than occasional bending or any kneeling, crawling, working at heights, or working around moving machinery, had to avoid moderate stress, and required the flexibility to sit or stand at her option.
 
 
 8
 Joseph Malancharuvil, Ph.D., a licensed clinical psychologist, testified that based on his review of all of the psychiatric and psychological evidence, King suffered from a somatoform pain disorder[1] and a histrionic personality disorder. Dr. Malancharuvil reported that other treating doctors had diagnosed King as suffering from dysthymia and post traumatic stress disorder, as well as depression and anxiety. He further testified that the evidence indicated that King was capable of functioning in a work environment as long as there was low stress and no overly demanding interpersonal relationships with coworkers and supervisors.
 
 
 9
 Finally, the Administrative Law Judge ("ALJ") posed a hypothetical question asking the vocational expert ("VE") to assume an individual of King's age, education, and work history, who could perform light-exertion work, but would need a sit/stand option, could bend or stoop occasionally, but could not kneel or crouch, could not work around moving machinery or heavy equipment, and would require a low stress environment with only minimal contact with coworkers and supervisors and only superficial contact with the public. The VE testified that there existed significant numbers of jobs in the regional and national economies which a person with those limitations would be capable of performing. Such jobs included: security system monitors (numbering approximately 2,000 jobs in Southern California, and 25,000 nationally); cashier[2] with a sit/stand option (5,000 jobs locally, 50,000 positions nationally); assembler, sorter, and packer positions (5,000 jobs locally, 50,000 positions nationally); and light clerical positions with minimal contact with co-workers (10,000 jobs locally, 100,000 jobs nationally).
 
 
 10
 The ALJ found that King could perform the full range of light and sedentary work reduced by the need for a sit and stand option, occasional bending only, no work at unprotected heights or around moving or heavy machinery, low stress, and limited contact with co-workers, supervisors, and the public. The ALJ concluded that King had a limited education, but that she possessed the ability to spell and perform simple math. Ultimately, the ALJ determined that King could perform the work identified by the VE and that approximately 22,000 such jobs existed in the regional economy, and 225,000 in the national economy. The ALJ decision became the final decision of the Commissioner when the Appeals Council denied King's request for review.
 
 
 11
 King appealed the ALJ's decision to the district court and consented to a hearing before a magistrate judge. After reviewing the administrative record, the magistrate concluded that the ALJ's decision was supported by substantial evidence. The magistrate rejected King's arguments that the ALJ had failed to identify specific jobs which King was capable of performing and which existed in significant numbers in the national economy.
 
 II. Standard of Review
 
 12
 We review a district court's order upholding the Commissioner's denial of benefits de novo. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). The scope of our review, however is limited; we must affirm the Commissioner's decision if substantial evidence supports that decision and the Commissioner applied the correct legal standard. Id. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Flaten v. Secretary of Health and Human Serv., 44 F.3d 1453, 1457 (9th Cir.1995).
 
 III. Discussion
 
 13
 The sole issue before us is whether the ALJ's finding that there existed significant numbers of jobs in the national economy which King was capable of performing, is supported by substantial evidence.[3]
 
 
 14
 King asserts that according to the Commissioner's own authority, the jobs identified by the VE as being suitable for someone with her mental and physical limitations are beyond her capacity to perform, and that the ALJ's determination is therefore not supported by substantial evidence. King bases this assertion on characteristics of certain occupational listings contained in the Dictionary of Occupational Titles, U.S. Dep't of Labor (4th ed. 1991) ("DOT") and the Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, U.S. Dep't Labor (1993) ("Selected Characteristics"). The Commissioner routinely relies on these publications in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy. See Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.1990); see also, 20 C.F.R. § 404.1566(d) (noting that Commissioner will take administrative notice of reliable job information available from various publications, including the DOT ).
 
 Security Monitor
 
 15
 King argues that according to Selected Characteristics, the job of Security Monitor requires frequent talking, inconsistent with her restrictions to superficial contact with the public and limited contact with coworkers and supervisors. However, the reference listed by King concerns only government-employed security monitors in public transportation terminals. Selected Characteristics also includes many monitoring positions requiring only occasional talking which the medical experts testified King was capable of performing.
 
 
 16
 King also argues that the security monitor jobs identified by the VE are "semi-skilled" positions, rather than the unskilled type of work that King was able to perform. However, the DOT listings for several monitoring positions require less than thirty days' training and are classified as having a Special Vocational Preparation ("SVP")[4] rating of 2 or lower. We have previously noted that the definition of SVP 2--"anything beyond short demonstration up to and including 30 days"--corresponds precisely to the definition of "unskilled work" embodied in the Social Security Administration regulations. Terry, 903 F.2d at 1276.[5]
 
 
 17
 Furthermore, the ALJ properly relied on the testimony of the VE that there were 25,000 unskilled security monitor positions (where the security person sits and watches video monitors) in the national economy. "The DOT 'is not the sole source of admissible information concerning jobs.' Barker v. Shalala, 40 F.3d 789, 795 (6th Cir.1994). 'The Secretary may take administrative notice of any reliable job information, including ... the services of a vocational expert.' Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir.1991)." Johnson, 60 F.3d at 1435. Even if there were discrepancies between the DOT and the VE testimony it is up to the ALJ to decide the applicability of each. See id. Thus, the ALJ's conclusion that King could perform the job of security monitor is supported by substantial evidence since it is based on testimony of the VE and is also consistent with listings in the DOT.
 
 Cashier Position
 
 18
 King disputes the ALJ's conclusion that she can function as a cashier because according to Selected Characteristics the job involves frequent talking and interaction with the public. However, Dr. Malancharuvil testified that King was only slightly to moderately limited in her social functioning and that superficial contact with the public would not pose the same obstacles that more personal interaction with coworkers and supervisors would create. Also, King testified that she frequently goes to the movies, shops at the mall, and takes her youngest daughter to the park, further supporting the ALJ's conclusion that she can withstand superficial contact with the public. The VE testified that there existed a significant number of cashier's positions, regionally and nationally, involving only superficial interaction with the public, with a sit/stand option. Thus, the conclusion that King was capable of performing the job of cashier is supported by the evidence that was before the ALJ.
 
 Assembly, Packing, and Sorting Jobs
 
 19
 King claims that she cannot perform assembly, packing, and sorting jobs because the job of "Hand Packager," according to DOT, requires medium exertion. However, the DOT also lists dozens of jobs in assembly, packing, and sorting which require only light exertion. Based on the DOT listings, as well as the VE's testimony that there exist 50,000 jobs nationally which a person with King's limitations could perform as assembler, sorter and packer, we find that the ALJ's conclusions relating to King's ability to perform such jobs is supported by substantial evidence.
 
 The ALJ's Findings
 
 20
 Finally, King argues that because she was not represented by counsel during her hearing, the ALJ should have been especially diligent in ensuring that favorable as well as unfavorable facts and circumstances were elicited. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985). King argues that the ALJ accepted the VE's testimony without probing into whether King could perform all of the requirements of the occupations.
 
 
 21
 The ALJ's opinion does not support King's assertions. The ALJ provided detailed and clear bases for his findings. The ALJ noted that the testimony of the medical experts was fully consistent with the objective medical evidence of record. The ALJ noted that "[f]rom the claimant's testimony, it appears that she leads a fairly normal, active family life." Based on King's own description of her life style, the ALJ noted that "the exertional limitations she mentioned are simply not consistent with the life style about which she testified," nor are they consistent with the objective medical evidence. Also, the ALJ noted that following the VE's testimony at the hearing that without the ability to do simple math or spelling the positions of Cashier and Clerical Worker would not be available, King stated for the first time that she has trouble with both simple math and spelling. The ALJ found "it totally incredible that the claimant was able to do bookwork, estimating and soliciting in her asphalt paving business for seven years, but cannot spell or do simple math."[6] The ALJ thus clearly articulated his reason's for discounting certain testimony. The hypothetical that he posed to the VE was consistent with all of King's limitations. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988) (noting that hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant in order to have any evidentiary value).
 
 CONCLUSION
 
 22
 King has done nothing more than show that there were a few specific jobs in the DOT that she might not be able to perform within broad categories of job descriptions. However, there are numerous jobs, in both the regional and national economies that King is capable of performing. The ALJ's decision denying King's applications for DIB and SSI was supported by substantial evidence.
 
 
 23
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 * Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Somatoform disorders involve physical symptoms suggesting a physical disorder, but "for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption, that the symptoms are linked to psychological factors."
 
 
 [2]
 The VE testified that the cashiering position would require 6th grade level math skills and that the clerical positions would require 6th grade language skills
 
 
 [3]
 Once a claimant establishes that she is unable to perform past relevant work, the Commissioner has the burden of proving that there is work which the claimant can perform and that such work exists in significant numbers in the national economy or in the region in which the claimant resides. See Johnson v. Shalala, 60 F.3d, 1428, 1432 (9th Cir.1995)
 
 
 [4]
 SVP ratings measure the approximate length of time required to learn the skills necessary to perform a given job. Terry, 903 F.2d at 1276
 
 
 [5]
 King raises the similar argument that she cannot perform the occupation of clerk, classified as SVP 3, which is semi-skilled labor. However, once again, according to the DOT several representative clerical positions require less than thirty days' training and are classified as having an SVP rating of 2 or lower
 
 
 [6]
 Although the ALJ found it inconsistent that King cannot do simple math or spelling and yet did the book-keeping for the paving company, the ALJ stated that "even assuming" the cashier and clerical positions were eliminated there would still be significant numbers of jobs King could perform