862 F.2d 875
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Ric Isaac CHAMBERS, Petitioner-Appellant,
v.
Kenneth DUCHARME, Superintendent of Washington State
Reformatory, Respondent- Appellee.
 No. 88-3598.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1988.
Decided Nov. 15, 1988.
 Before JAMES R. BROWNING, WALLACE and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ric Isaac Chambers appeals the district court's order denying his petition for writ of habeas corpus under 28 U.S.C. Sec. 2254. Appellant contends that his first degree murder conviction was invalid because the state unconstitutionally secured incriminating statements from him.
 
 FACTUAL BACKGROUND
 
 3
 The trial court made the following findings of fact:
 
 
 4
 On the night of October 8, 1977, detectives of the King County Department of Public Safety were investigating the homicide of Lynna Est. At midnight, the detectives were at the residence of the appellant's sister, waiting for a search warrant authorizing the search of the appellant's vehicle, which was parked in the garage of this residence. At approximately 12:25 a.m. on October 9, 1977, the appellant arrived at the residence in a car with his mother. The detectives approached the appellant and informed him that they were waiting for a search warrant for the car.
 
 
 5
 At this time, the detectives were aware that appellant had been seen driving toward the home where the victim, Lynna Est, had been baby-sitting at the time she disappeared. They had also observed what appeared to be bloodstains in the appellant's vehicle parked in the garage.
 
 
 6
 The appellant told the detectives that the car was not his, that it belonged to his brother, Bill. Following a brief conversation, a detective requested that the appellant come to his vehicle. The appellant was immediately verbally advised of his constitutional rights. The appellant was also asked if he understood his rights and said that he did, that he had done nothing wrong and did not need an attorney.
 
 
 7
 The detective explained that they were investigating the death of Lynna Est, and that the appellant was a suspect. Appellant said that he had nothing to hide, that he had done nothing wrong and did not mind talking to the detectives. For the next hour, the detectives questioned the appellant regarding his activities on the night of the homicide.
 
 
 8
 At approximately 2 a.m., the detective began taking a written statement from the appellant. The detective advised the appellant of his constitutional rights using a written form and reading the rights out loud to him. The detective asked if he understood his rights and the appellant replied that he did. The detective asked the appellant to give him his interpretation of what the rights meant to him. The appellant said that he knew he had the right to remain silent, and the right to an attorney, but he did not wish an attorney because he had done nothing wrong. The appellant also read the rights out loud to the detective. The appellant signed the written explanation of rights form twice, acknowledging the explanation of rights and a waiver of his rights.
 
 
 9
 The detective prepared a written statement of the appellant's activities on the night of the homicide. The appellant read this statement out loud and signed the statement. The appellant was formally arrested and transported to the King County Jail. The appellant was booked into the King County Jail according to the standard booking procedure. Constitutional rights warning signs were prominently displayed in the King County Jail, including the telephone number of the office of Public Defense. During the booking procedure, the booking officer filled out a standard booking form. This form included the question: "Atty. Requested?" This question was typed in with the answer "yes". The booking officer who filled out this form did not have independent recollection of booking the appellant. His procedure with regard to this question is to ask the person being booked if he has an attorney. If the person says no, the booking officer checks "yes". The booking officer also checks "yes" if the person affirmatively requests an attorney.
 
 
 10
 On Monday, October 10, 1977, the appellant was again advised of his constitutional rights from a written form which he signed. The appellant gave a second written statement. Later that day the appellant was again advised of his rights through a written form. The appellant signed this form and took a polygraph test. Following the polygraph, the appellant was returned to the police interview room, where he was again advised of his constitutional rights.
 
 
 11
 Following his preliminary appearance on the calendar, the appellant was returned to the interview office and was again advised of his constitutional rights. The appellant again acknowledged and waived those rights in writing. A third written statement was taken, and the appellant was returned to jail.
 
 
 12
 On October 11, 1977, the detective again advised the defendant of his constitutional rights verbally and interviewed him. At 10:00 a.m., the appellant was again advised of his constitutional rights through a written form, which the appellant signed. A fourth written statement was completed and the appellant was returned to jail.
 
 
 13
 The appellant was charged with first degree murder. On January 24, 1978 to January 27, 1978, the trial court held a hearing to determine the admissibility of the various statements made by appellant and subsequently entered its findings of fact and conclusions of law. The statements were admitted into evidence during the trial. On April 5, 1978, appellant was convicted by jury of first degree murder and sentenced to 20 years to life imprisonment. In 1979, the Washington Court of Appeals affirmed the conviction. The appellant did not appeal this decision.
 
 
 14
 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. Chatman v. Marquez, 754 F.2d 1531, 1533-34 (9th Cir.), cert. denied, 474 U.S. 841 (1985) and Prantil v. California, 843 F.2d 314, 316 (9th Cir.1988). In reviewing a district court's grant or denial of a habeas corpus petition, state court factual conclusions are entitled to a presumption of correctness. 28 U.S.C. Sec. 2254(d).
 
 
 15
 Although there appears to be some question as to whether appellant requested the assistance of counsel during the booking procedures, for the purposes of this appeal we assume that he did. The sole question on this appeal is whether the appellant effectively waived his right to the assistance of counsel after invoking this right during the booking procedures.
 
 
 16
 Appellant contends that having exercised his right to have counsel he did not validly waive this right prior to making subsequent incriminating statements and confessions. Specifically, appellant alleges that his youth, his impaired mental function, his low reading and spelling skills, and his overall limited mental abilities argues against voluntariness.
 
 
 17
 In United States v. Rodriguez-Gastelum we rejected a per se rule prohibiting a suspect from waiving his right to have the assistance of counsel after initially requesting such assistance. 569 F.2d 482, 486 (9th Cir.) (en banc), cert. denied, 436 U.S. 919 (1978). The Rodriguez court adopted the Zerbst test for determining whether a suspect who has asserted his right to counsel later waives that right; "[C]ourts indulge every reasonable presumption against waiver.... The determination of whether there has been intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case." Id. at 488, quoting Johnson v. Zerbst, 304 US. 458, 464 (1938). Thus, the court looks to the characteristics of the defendant--including his age, his lack of education, or his low intelligence--and the conduct of the police, including whether Miranda warnings were given, the repeated and prolonged nature of the questioning, the use of physical punishment, and whether defendant was threatened, tricked or cajoled into misaction by police. See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).
 
 
 18
 The trial court made the following factual conclusions: Appellant has a normal I.Q. and understands his constitutional rights; twenty-six hours had elapsed between the time of booking and the subsequent interrogation; during this time, a pretrial interviewer asked the appellant about obtaining an attorney and he said he didn't need one; prior to beginning each interrogation the detectives advised the appellant of his constitutional rights from a written form which he signed acknowledging and waiving those rights; appellant was advised of his rights a total of eight times and at no time did he tell any of the detectives that he wanted to cease questioning or that he wanted to see an attorney; statements by appellant were not compelled by interrogation; appellant has a sufficient understanding of his constitutional rights to knowingly, intelligently and voluntarily waive his rights and did effectively waive his rights prior to making each statement. These findings of fact must be presumed correct. 28 U.S.C. Sec. 2254(d).
 
 
 19
 Despite the strong presumption against waiver, Brewer v. Williams, 430 U.S. 387, 404 (1977), the trial court's findings and the record unquestionably reveal that Chambers validly waived his sixth amendment and fifth amendment rights to counsel. As a consequence, the admission of Chambers' incriminating statements to the detectives did not violate his protections against uncounseled interrogations and we affirm the district court's order denying appellant's petition for habeas corpus.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3