35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles WILLIAMS, Plaintiff-Appellant,
v.
Donna E. SHALALA,* Defendant-Appellee.
 No. 92-55753.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided Sept. 13, 1994.
 
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,** Senior District Judge.
 MEMORANDUM***
 Plaintiff-Appellant Charles Williams appeals from the district court's grant of summary judgment in favor of the defendant Secretary of Health and Human Services (the "Secretary") in this action challenging the Secretary's denial of his second application for disability benefits pursuant to Titles II and XVI of the Social Security Act. In his application, Williams alleged disability due to the amputation of his right leg, hypertension, a personality disorder, and substance abuse. Following this Court's remand for further consideration of Williams' exertional capacity and vocational expert testimony, the Secretary determined that Williams retained the residual functional capacity to perform light and sedentary work. Williams now argues on appeal that the Secretary's determination is not supported by substantial evidence, that his due process rights were violated by the district court's application of res judicata, and that the Secretary made various legal errors in reaching its conclusion. Because we do not find that substantial evidence supports the Secretary's ultimate findings, we reverse and remand for further proceedings consistent with this opinion.
 I.
 BACKGROUND
 Plaintiff Charles Williams was born on July 31, 1944, and has completed the tenth grade. He has alleged a disability to work since July 23, 1981, at which time he sustained a crash injury to his right foot and leg which required below-the-knee amputation of his right leg. His prior jobs included machine operator, truck driver, forklift operator, laborer with a lumber company, and buffer/grinder. In 1986, Williams returned to work as a security guard; he has apparently worked intermittently in this capacity from 1987 to 1990.
 Alleging that he became disabled as a result of the July 1981 accident, Williams first filed an application for disability insurance benefits and supplemental security income ("SSI") benefits on April 21, 1983. This application was denied by Administrative Law Judge ("ALJ") Edward I. Staten on January 30, 1984. Excerpt of Record ("ER") at 5-10. Williams did not appeal from this determination. Williams next filed applications for disability benefits on July 10, 1984 and July 23, 1984 respectively, again alleging that he became disabled on July 23, 1981, when he suffered his crash injury and had to have his right leg amputated. His applications were denied both initially and on reconsideration by the Social Security Administration, which found him not to be disabled. Williams then requested an administrative hearing before an ALJ. Following this hearing, ALJ Donald A. Altman found on February 15, 1986 that the plaintiff was not disabled. ER at 11-19. The Appeals Council approved the ALJ's decision on April 15, 1986.
 On May 15, 1986, Williams filed an action in federal court pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Secs. 405(g) & 1383(c)(3), for judicial review of the Secretary's decision. On September 23, 1987, the district court adopted the recommendations of the magistrate judge and granted the Secretary's motion for summary judgment. The plaintiff then appealed to this Court, which in an unpublished memorandum decision dated November 14, 1988, reversed and remanded the case to the Secretary for reconsideration of Williams' exertional capacity and vocational expert testimony. Williams v. Bowen, 862 F.2d 875 (9th Cir.1988). Accordingly, another hearing was held before ALJ Altman, who issued a decision on November 6, 1988 finding that Williams was not disabled since he remained capable of doing certain light jobs as identified by the vocational expert. ER at 20-26.
 Upon learning that the plaintiff had been working as a security guard during at least part of the period for which he alleged disability, the Appeals Council asserted jurisdiction over Williams' case. On March 14, 1991, the Appeals Council amended the ALJ's findings to reflect Williams' substantial gainful activity beginning in 1988 and adopted the ALJ's determination that the plaintiff was not disabled and therefore not entitled to either disability insurance or SSI benefits. ER at 27-31. This decision became the final decision of the Secretary.
 Williams next sought review in federal district court. On March 4, 1992, the district court judge adopted the report and recommendation of the magistrate judge, which found that the Secretary's determination that Williams was not disabled was supported by substantial evidence. On March 11, 1992, the district court entered summary judgment in favor of the Secretary. ER at 49. The plaintiff now appeals the district court's grant of summary judgment.
 The district court exercised its jurisdiction under 42 U.S.C. Secs. 405(g) and 1383(c). We have jurisdiction under 28 U.S.C. Sec. 1291.
 II.
 STANDARD OF REVIEW
 We review de novo a district court's order upholding the Secretary's denial of benefits. Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.1993); Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir.1993). See also Miller v. Heckler, 770 F.2d 845, 847-48 (9th Cir.1985); Haluapo v. Akashi Kaiun, K.K., 748 F.2d 1363, 1364 (9th Cir.1984). In determining whether the district court correctly upheld the Secretary's denial of benefits, we must review the Secretary's decision to determine whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied. Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990). The Supreme Court has held that while a mere scintilla of proof will not suffice to uphold the Secretary's findings, the standard of substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). See also Matthews, 10 F.3d at 679 (citing Tylitzki, 999 F.2d at 1413). In our review for substantial evidence, we must consider the administrative record as a whole. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989).
 III.
 DISCUSSION
 The Social Security Act provides that an applicant for disability benefits must establish an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. Sec. 1382c(a)(3)(A). A person is determined to be under a disability only if:
 his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
 42 U.S.C. Secs. 423(d)(2)(A), 1382(a)(3)(B). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Secs. 423(d)(3), 1382(a)(3)(C).
 As articulated in 42 U.S.C. Sec. 1382(a)(3), 20 C.F.R. Sec. 416.920 (1993), the Secretary must undertake a five-part sequential inquiry to ascertain whether the claimant is disabled within the meaning of the Social Security Act, 42 U.S.C. Sec. 423(1)(1)(D), such that he or she would be entitled to benefits. Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir.1990). The Secretary must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. Next, the Secretary must determine whether the claimant has a severe impairment. If no severe impairment is found, the claimant is not disabled. If the claimant has an impairment which meets or is equivalent to an impairment listed in the regulations, the claimant is disabled. If the claimant does not have a listed impairment, the Secretary must consider whether the impairment in combination with other factors prevents the claimant from doing past work. Finally, the Secretary must consider whether the claimant can perform other work. The sequential inquiry is terminated when a question is answered affirmatively or negatively in such a way that a decision can be made that the claimant is or is not disabled. Id.
 Following this Court's remand, an administrative hearing was held during which this sequential evaluation process was followed. ALJ Altman on November 6, 1989 concluded that, based on his exertional capacity for light and sedentary work, his age, his education, and his past work experience, the plaintiff was not disabled. ER at 26. Having obtained updated earnings information revealing that Williams had been engaged in substantial gainful activity beginning "sometime in 1988 and continuing" through his employment as a security guard, the Appeals Council adopted the ALJ's findings, but modified them slightly to reflect this fact. ER at 29-30.
 It is this decision, which constitutes the Secretary's final decision, that the plaintiff challenges. He argues that the Secretary erred by applying incorrect legal standards in determining that he is not disabled and that substantial evidence does not support the Secretary's finding that he retains the residual functional capacity to perform certain light jobs.
 A. Res Judicata
 Williams' first April 21, 1983 application for disability benefits was denied by ALJ Staten on January 30, 1984. Because Williams failed to appeal this determination, it was final and binding and is res judicata as to his nondisability prior to January 30, 1984. 42 U.S.C. Sec. 405(h); Miller, 770 F.2d at 848 (finding an unappealed ALJ decision final and binding on both claimant and Secretary under res judicata ). On appeal, Williams argues that res judicata should not be applied here because to do so would result in manifest injustice and violate his due process rights.
 
 
 1
 In Thompson v. Schweiker, 665 F.2d 936, 940 (9th Cir.1982), this Court recognized that the enforcement of administrative res judicata "must be tempered by fairness and equity." We there held that "[w]here the record is patently inadequate to support the findings the ALJ made, application of res judicata is tantamount to a denial of due process." Id. at 941. Williams argues that the record is patently inadequate to support ALJ Staten's findings such that manifest injustice has resulted. This Court previously considered the application of res judicata with respect to the 1984 denial of benefits and held in our November 14, 1988 decision that the ALJ's finding of nondisability is res judicata with respect to Williams for the time prior to January 30, 1984. Moreover, even had this Court not already ruled on this issue, Williams has failed to demonstrate that application of administrative res judicata would either be unfair or constitute manifest injustice in this case.
 
 
 2
 After careful consideration of the record, we conclude that Williams has failed to demonstrate that ALJ Staten's finding in 1984 that he was not disabled constitutes manifest injustice. If the plaintiff had seriously questioned the validity of that ruling, he should have appealed it at the appropriate time. Since he did not, it is final and binding and is res judicata as to his nondisability prior to January 30, 1984.
 
 B. New Evidence
 
 3
 In support of his appeal, the plaintiff has submitted new evidence consisting of Veterans Administration ("VA") medical records documenting six hospitalizations which occurred between March 3, 1982 and April 3, 1992. Br. of Appellant, Ex. A. Williams urges this Court to consider this "new and material" evidence in its review of his case. These brief clinical reports describe Williams' various afflictions: reactive depression, alcohol dependency, severe depression, atypical psychosis, alcohol and poly-substance abuse, antisocial personality, adjustment disorder with mixed emotional features, and schizo-affective schizophrenia.
 
 
 4
 This Court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 511 (9th Cir.1987); Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985); Goerg v. Schweiker, 643 F.2d 582, 584 (9th Cir.1981). Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to incorporate the evidence in a prior proceeding. 42 U.S.C. Sec. 405(g). See also Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir.1984).
 
 
 5
 To meet the materiality requirement, the new evidence must bear directly and substantially on the matter. If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. Key, 754 F.2d at 1551; Booz v. Secretary of Health & Human Services, 734 F.2d 1378, 1380 (9th Cir.1984). At a minimum, new evidence must be probative of some mental or physical impairment in order to support remand. Key, 754 F.2d at 1551; Hall v. Secretary of Health, Educ. and Welfare, 602 F.2d 1372, 1377 (9th Cir.1979).
 
 
 6
 The new evidence provided by Williams is material to his case to the extent that it establishes that he was diagnosed with certain mental impairments--such as reactive depression--as early as March 1982. The evidence also supports his position regarding the increasingly debilitating effects of his alcohol and substance dependency. However, our careful scrutiny of the new evidence suggests that most of it is cumulative of the medical evidence already presented to and considered by the Secretary in reaching its decision.
 
 
 7
 Moreover, although Williams has demonstrated that some of the evidence is material, he has failed to demonstrate the requisite good cause for his failure to submit the evidence to the ALJ at the hearing, or even to the district court. Williams offers no explanation why we should find good cause, other than to state that "[c]ertain of the new evidence, while it existed during the period from 1982 through 1988, was not previously furnished to the plaintiff." Br. of Appellant at 44. Williams has failed to show that he could not have obtained this evidence at the time of either the administrative or the district court hearings. This situation closely parallels that in Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir.1990), in which this Court held that there was no good cause shown where the plaintiff merely asserted that "the evidence turned up later, during another proceeding." See also Key, 754 F.2d at 1551; Allen v. Secretary of Health & Human Services, 726 F.2d 1470, 1473 (9th Cir.1984). Accordingly, good cause has not been shown and we will not remand for the purpose of consideration of the VA medical records.
 
 C. Listing of Impairments
 
 8
 As noted above, the Secretary found that Williams did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix One, Subpart P, Regulations No. 4. On appeal, Williams posits several arguments suggesting that this finding was erroneous.
 
 
 9
 Section 12.05(C) of Appendix One to the Secretary's regulations governing disability determinations sets forth the standard the plaintiff must meet to be eligible for benefits when the disability is based, in part or in whole, upon a claim of mental retardation. The section provides that the listed impairment of mental retardation meets the required level of severity when the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.05(C). Section 12.00(D) of the Appendix provides that "where more than one IQ is customarily derived from the test administered ... the lowest of these is used in conjunction with listing 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(D).
 
 
 10
 Section 12.00(D) further requires that an I.Q. score be valid. The I.Q. score must reflect the plaintiff's true abilities as demonstrated by his performance at work, household management, and social functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(B)-(C). According to the regulations, in assessing the validity of a claimant's I.Q. "[i]nformation from both medical and nonmedical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased mental demands (stress)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(D).
 
 
 11
 Between the time of the ALJ's decision and the Appeal Council's decision, Dr. Dimitri Polonsky reported that Williams had a full scale I.Q. of 70, a verbal I.Q. of 69, and a performance I.Q. of 73, and opined that the plaintiff could not manage persistent employment due to his emotional condition. Exhibit AC-1. Williams submitted the Polonsky report to the Appeals Council, contending that he met the requirements of section 12.05(c) of the above-described Listing of Impairments. The Appeals Council disagreed that Williams was mentally impaired, noting that "[t]his score appears to be inconsistent with the claimant's completion of the eleventh grade, taking bookkeeping and accounting courses, and performing as a machine operator, forklift driver, truck driver, and more recently as a security guard." ER at 29. The Appeals Council further noted that I.Q. "testing just 7 months earlier showed a verbal score of 79 ... and in September 1985 it was recorded as 78...." ER at 29. The Appeals Council thus concluded that the score of 69, which would have met the section 12.05 requirement, was not a valid indication of Williams' intellectual abilities.
 
 
 12
 When tested for his I.Q. in May 1989 and May 1985, the plaintiff received scores well above those required to establish presumptive disability under section 12.05(c). One of the testing physicians at that time actually reported that Williams' overall functioning was greater than the test results and that he could perform appropriate work if motivated. These facts, as well as the fact that Williams had been functioning as a security guard since 1988, defeat the plaintiff's contention that the Secretary's findings constitute reversible error.
 
 
 13
 Moreover, section 12.05 defines mental retardation to be a condition of "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.05 (emphasis added). The plaintiff's earlier significantly higher I.Q. scores suggest that his condition may not have existed during his developmental period, which would preclude his mental condition from satisfying the section 12.05 standard. See Brown v. Secretary of Health and Human Services, 948 F.2d 268, 271 (9th Cir.1991) (remanding for consideration of whether lower I.Q. scores existed during developmental period).
 
 
 14
 Williams next argues that the Secretary should have found him disabled under section 201.00(h) of the regulations. Utilization of the grids to determine if a claimant is disabled is not appropriate in every case. Accordingly, section 201.00(h) of the grids provides that a finding of disability is not precluded even for those individuals under age 45 who do not meet all of the criteria for a specific rule and who do not have the ability to perform a full range of sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00(h). To illustrate this situation, Example 2 states:
 
 
 15
 An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.
 
 
 16
 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00(h). Williams contends that he meets or exceeds the characteristics of this example and should therefore be found disabled.
 
 
 17
 This argument also fails. First, the plaintiff is not illiterate. Second, while Williams cannot perform vocationally relevant past work, the vocational expert testified at the hearing that there exist in significant numbers jobs which the plaintiff can perform. Also, although his I.Q. score is arguably near or even below that of the hypothetical individual, the plaintiff has proven that he is capable of performing certain jobs--he has been employed intermittently with a security agency from 1986 to at least 1990. Simply put, Example 2 is inapplicable to Williams.
 
 
 18
 The plaintiff next contends that he has demonstrated mental impairments which preclude performance of any job on a regular basis. He claims that the ALJ and the Appeals Council failed to credit objective medical evidence of his mental impairment--namely, (1) the report of Dr. James Andrews which found that Williams was seriously limited in following work rules, relating to co-workers, dealing with the public, dealing with work stress, functioning independently, maintaining attention and concentration, and understanding detailed job instructions; (2) the report of Dr. Dimitri Polonsky which found that Williams was functioning in the borderline range of intelligence due to his psychoactive substance dependence, other psychoactive substance dementia, and organic personality disorder; and (3) the report of Dr. Donald Spiegel which indicated impairment of abstract thinking and a low level of literacy.
 
 
 19
 Notwithstanding Williams' arguments to the contrary, both ALJ Altman and the Appeals Council appear to have taken these objective medical reports into account in rendering their decisions. Moreover, where either accorded less weight to a particular doctor's report or diagnosis, specific reasons were articulated.
 
 
 20
 In his opinion, the ALJ acknowledged that Williams had symptoms indicating a personality disorder and a depressive syndrome. He further noted that Dr. Andrews diagnosed the plaintiff as having "passive-aggressive personality disorder with mixed substance abuse." Relying on Dr. Andrews' report, he observed that even Dr. Andrews opined that Williams' depression was under control at the time of the hearing and that he was functioning at a level consistent with at least borderline intelligence. According to Dr. Andrews' report, the plaintiff's memory, insight, and judgment abilities were adequate.
 
 
 21
 The Appeals Council similarly considered this evidence and largely adopted the ALJ's findings. However, the Appeals Council further found that Dr. Andrews' report of Williams' "fair" abilities to complete work functions indicated that work functions were not precluded for the plaintiff. Also, the Appeals Council noted that Dr. Andrews' report was made at the time that Williams was already demonstrating his capacity for work functions through his employment as a security guard.
 
 
 22
 In February 1985, the plaintiff was hospitalized for a situational adjustment reaction to marital problems. The examining psychologist, Dr. Speigel, found that Williams had a low level of literacy and some impairment regarding abstract thinking, noting that the intelligence testing results might lack credibility. He also reported low intelligence, alcohol abuse, and other psychological problems including a schizoid personality. Contrary to Williams' contentions on appeal, the ALJ did not disregard this evidence; rather, he considered the reports in concluding that Williams suffered from a personality disorder, depressive syndrome, and substance abuse. The Appeals Council similarly acknowledged the reports to reflect "a brief period of situational stress."
 
 
 23
 Dr. Polonsky performed a psychological evaluation of the plaintiff in December 1989, providing diagnostic impressions of psychoactive substance dependence, other psychoactive substance dementia, and organic personality disorder. However, finding that Dr. Polonsky's report was "at odds with the other medical evidence of record, [plaintiff's] testimony at the hearing, and the evidence that at or near this time [plaintiff] was engaging in substantial gainful activity," the Appeals Council afforded "little probative weight" to Dr. Polonsky's conclusions.
 
 
 24
 The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, this Court may not substitute its judgment for that of the Secretary. Richardson, 402 U.S. at 400; Magallanes, 881 F.2d at 750 ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony."); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (" '[Q]uestions of credibility and resolution of conflicts in testimony are functions solely of the Secretary.' "). See also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984) (when conflicts exist in medical evidence, it is the ALJ's responsibility to resolve them). In light of the whole record, the Appeals Council's conclusion was reasonable since Dr. Polonsky's report clearly conflicted with the earlier medical and psychological reports, which indicated only minor mental problems. The Appeals Council's reasons for according little weight to this report were adequately articulated in its decision.
 
 
 25
 Williams argues that the Secretary did not adequately assess the severity of his addiction to alcohol and drugs. It is well established that alcoholism by itself may constitute a non-exertional limitation if it prevents a claimant from engaging in substantial gainful activity. Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir.1987); Johnson v. Harris, 625 F.2d 311 (9th Cir.1980); Griffis v. Weinberger, 509 F.2d 837 (9th Cir.1975). The record undoubtedly establishes that the plaintiff has had an extensive history involving nearly constant alcohol abuse and occasional drug abuse. In his brief, the plaintiff suggests that anyone with his condition is unable to work regularly at any job.
 
 
 26
 However, Williams fails to reconcile this statement with the fact that he has intermittently performed substantial gainful activity as a security guard since 1986. To the extent that the plaintiff contends that his work as a security guard did not constitute substantial gainful activity, we disagree. His earnings in excess of $300.00 per month during 1988 and 1989 presumptively establish that his work was substantial gainful activity under the social security regulations. 20 C.F.R. Secs. 401.1574(b)(2)(vi) & 416.974(b)(2). Under these regulations, even part-time work may constitute substantial gainful activity under the Social Security Act, or demonstrate the ability to engage in substantial gainful activity. 20 C.F.R. Secs. 404.1572(a), 416.972(a). See Katz v. Secretary of Health & Human Services, 972 F.2d 290, 294 (9th Cir.1992); Garnett v. Sullivan, 905 F.2d 778 (4th Cir.1990); Wright v. Sullivan, 900 F.2d 675 (3d Cir.1990); Beasley v. Califano, 608 F.2d 1162 (8th Cir.1979).
 
 D. Vocational Expert Testimony
 
 27
 On remand, the ALJ found that Williams had the residual functional capacity to perform physical exertion and nonexertional requirements of work, except heavy lifting, prolonged walking, standing, running, jumping, climbing, or balancing and work requiring close concentration to detailed and complex tasks. He also found that, based on this exertional capacity for light work, and in light of Williams' age, education, and previous work experience, application of the grids commanded the conclusion that he was not disabled. The ALJ concluded that Williams was capable of certain light and sedentary jobs identified by vocational expert Dr. Alex D. Aloia as existing in significant numbers in the national economy.
 
 
 28
 The ALJ first noted that because Williams' previous activity was at medium exertional levels, he could not return to his past relevant work. Dr. Aloia was then asked by the ALJ six hypothetical questions wherein he was presented with situations and limitations similar to those of the claimant. Dr. Aloia testified that a person of Williams' age and limited education, who was handicapped as a result of a below-the-knee amputation of one leg, and who required use of a prosthesis, could perform sedentary work activity existing in significant numbers in the local Los Angeles community, including occupations of ticket seller (4,000 jobs), cashier (5,000 jobs), stationary parking attendant (5,000 jobs), and assembler (22,000 jobs). Williams argues on appeal that, in reaching his conclusion regarding nondisability, the ALJ improperly relied on the vocational expert's responses to hypothetical questions.
 
 
 29
 A hypothetical posed to a vocational expert must fully reflect all of the limitations on a claimant's activity. De Lorme v. Sullivan, 924 F.2d 841, 850 (9th Cir.1991) ("If the hypothetical does not reflect all the claimant's limitations, ... the expert's testimony has no evidentiary value"); Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir.1984). If the hypothetical does not reflect all of the claimant's relevant limitations, we have previously held that the expert's testimony has no evidentiary value to support the Secretary's finding that the claimant can perform jobs in the national economy. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir.1988); Gallant, 753 F.2d at 1457. See also Matthews, 10 F.3d at 681.
 
 
 30
 The hypothetical questions asked by the ALJ in this case, however, were consistent with the plaintiff's limitations. The question posed to the vocational expert by plaintiff's counsel, which addressed pain at an unsubstantiated degree of severity, was not based on facts fully supported by the medical evidence of record. Therefore, the ALJ was entitled to disregard it. De Lorme, 924 F.2d at 850; Embrey, 849 F.2d at 422. Moreover, Dr. Aloia in fact addressed Williams' allegations of pain and further testified that "if claimant's pain complaints were true and consistent with his testimony, then he would be precluded from performing most work." ER at 24.
 
 E. Pain Testimony
 
 31
 Williams claims that the ALJ improperly evaluated his complaints of pain by requiring him to provide objective medical evidence to support and document the severity of such complaints. In Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991) (en banc), this Court clarified the standard by which subjective complaints of pain are to evaluated.
 
 
 32
 In Bunnell, we held that the appropriate standard for evaluating pain in social security cases requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain. When such evidence is produced, medical findings which support the severity of pain are not required, and thus, the ALJ may not discredit the claimant's allegations of pain solely on the ground that the allegations are unsupported by objective medical evidence. Id. at 345, 347-48. See also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986); Varney v. Secretary of Health & Human Services, 846 F.2d 581, 583-84 (9th Cir.1988); Gamer v. Secretary of Health & Human Services, 815 F.2d 1275, 1279 (9th Cir.1987).
 
 
 33
 At the hearing before ALJ Altman, Williams testified that he has pain in his stump that occurs daily and lasts for approximately one or two hours at a time before medication. Several times a month, the pain is severe and even intolerable. He claimed that this leg pain is usually accompanied with back pain which occurs two or three times a month and can last for one or two days, requiring Williams to remain in bed. He also has pain in his right shoulder and right arm. He has swelling in his left foot and pain that prevents him from putting on shoes. Occasionally, Williams suffers from numbness and coldness in his right hand and pain in his left ankle. Sitting for more than an hour activates his back pain. Walking more than five blocks results in severe pain in his stump and left foot.
 
 
 34
 The ALJ found that Williams' allegations of periods of severe pain while sitting were unsupported by the observations of Drs. Kim and Andrews, and the ALJ himself. The ALJ observed that the "[c]laimant sat through the hearing without shifting or showing other visible signs of discomfort." ER at 24. The ALJ further found Williams' allegations of low back, right hand and left ankle problems unsupported by the evidence, noting however that Dr. Kim detected mild lower back problems. The ALJ concluded that Williams was consciously exaggerating his symptoms and that his allegations of severe debilitating pain were totally out of proportion with the medical evidence.
 
 
 35
 The Appeals Council observed that the ALJ's evaluation of Williams' pain reflected his consideration of the medical findings, observations of the claimant by him and other examiners, and the claimant's testimony regarding activities and functional abilities. The Appeals Council further found that Williams was not taking any pain medication, and thus concluded that Williams' complaints of pain were not fully credible.
 
 
 36
 We agree with Williams that the Secretary did not apply the correct standard for the evaluation of the his subjective complaints of pain. Under the standard announced in Bunnell,
 
 
 37
 [a]n adjudicator may ... use "ordinary techniques of credibility evaluation" to test a claimant's credibility. So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence. But the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.
 
 
 38
 947 F.2d at 346-47 (emphasis added). As the Bunnell court further noted, "if the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." 947 F.2d at 346 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)).
 
 
 39
 Williams complained of severe and wholly disabling pain. He clearly has physical problems which cause pain. The ALJ concluded that "[w]hile it is true that the claimant may suffer from a mild intolerance to pain which may have some effect on his ability to perform a full range of light activity, his allegations of severe pain and resulting limitations coupled with emotional impairments are totally out of proportion with the medical evidence." ER at 24. He stated that the "claimant is consciously exaggerating his symptoms [of pain]." Id.
 
 
 40
 This conclusion is not supported by substantial evidence in the record. The Secretary has not made the specific findings required by Bunnell to justify discrediting Williams' complaints of severe and debilitating pain. In fact, the plaintiff claims that his somatic disorder at least partially accounts for the lack of underlying medical evidence supporting conditions which could reasonably be expected to produce the degree of pain of which he complains. In reaching his conclusion, the ALJ relied primarily upon the facts that Williams was not taking pain medication and that he exhibited no visible signs of pain or discomfort during the hearing.
 
 
 41
 It is true that medical reports from July 1984 and April 1985 reveal that the plaintiff was not taking any pain medications. Exhibits B15 and B17. However, although the plaintiff was not taking any pain medication, there is abundant evidence revealing his abuse of both alcohol and drugs. Also, Williams complains of intermittent rather than constant pain. Therefore, the fact that he was able to sit in repose through the hearing does not warrant the conclusion that his complaints of pain were not credible or exaggerated. Williams' subjective complaints of pain should not have been discredited by the Secretary on the evidence before the ALJ.
 
 
 42
 The ultimate key issue, given the vocational expert's acknowledgement that if Williams' pain complaints were true, then he would be precluded from performing most work, is obviously the credibility of Williams' pain testimony. He does not contend that his severe and disabling pain is continuous. The record is devoid of any evidence other than Williams' testimony as to whether his condition is consistent or inconsistent with intermittent severe and disabling pain. The ALJ's conclusion that Williams' testimony was incredible is based on no medical evidence and on inferences which he drew from facts not necessarily inconsistent with occasional and intermittent severe and disabling pain which would, in Dr. Aloia's opinion, preclude Williams from most work.
 
 
 43
 Since it is so critical to the ultimate conclusion that Williams can perform gainful work, and the specific findings required by Bunnell have not been made, we conclude that further exploration of the question is essential.
 
 IV.
 CONCLUSION
 
 44
 The vocational expert testified that if Williams' complaints of pain were true, he would be unable to perform most work. Because we find that Williams' pain testimony should not, without further evidence, have been discredited by the Secretary, we conclude that Williams may be entitled to a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, and supplemental security income under sections 1602 and 1614(a)(3)(A) of the Act, unless evidence is adduced that his complaints are inconsistent with his condition.
 
 
 45
 For the reasons discussed above, we reverse and remand for further proceedings consistent with this opinion.
 
 
 
 *
 Pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure, Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 **
 Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3